Filed 2/5/15

## <u>CERTIFIED FOR PARTIAL PUBLICATION</u>[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>TIMOTHY JAMES RODRIGUEZ,<br><br>    Defendant and Appellant. | F067805<br><br>(Super. Ct. No. MCR04652)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Mitchell C. Rigby, Judge.

Sylvia Whatley Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Jennifer M. Poe, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, only the Introduction, part III of the Discussion, and the Disposition are certified for publication.

**SEE DISSENTING OPINION**

## INTRODUCTION

The Three Strikes Reform Act of 2012 (hereafter Proposition 36 or the Act) created a postconviction release proceeding for third strike offenders serving indeterminate life sentences for crimes that are not serious or violent felonies.  If such an inmate meets the criteria enumerated in Penal Code section 1170.126, subdivision (e), he or she will be resentenced as a second strike offender unless the court determines such resentencing would pose an unreasonable risk of danger to public safety.[1]  (§ 1170.126, subd. (f); *People v. Yearwood* (2013) 213 Cal.App.4th 161, 168.)

After the Act went into effect, Timothy James Rodriguez (defendant), an inmate serving a term of 25 years to life in prison following conviction of a felony that was not violent (as defined by § 667.5, subd. (c)) or serious (as defined by § 1192.7, subd. (c)), filed a petition for resentencing under the Act.  The trial court found defendant was "not disqualified from resentencing," but declined to resentence him due to the risk of danger to public safety.

In the published portion of this opinion, we hold the court did not err by failing to appoint an expert on the issue of current dangerousness.  In the unpublished portion, we conclude the trial court did not use the wrong legal standard, misallocate the burden of proof, or abuse its discretion by denying the petition.  We also conclude recently enacted section 1170.18, subdivision (c) does not modify section 1170.126, subdivision (f).  We affirm.

## FACTS AND PROCEDURAL HISTORY[*]

On February 22, 2000, defendant was stopped by a Madera law enforcement officer because he was wearing clothing that matched the description of that worn by an attempted robbery suspect officers were trying to locate.  Shortly after, defendant was

---

[1]     Further statutory references are to the Penal Code unless otherwise stated.

[*]     See footnote, *ante*, page 1.

taken into custody on unrelated charges. He was found to have five individually wrapped plastic bags of heroin in his belongings. While being booked into jail, he spontaneously stated he had been making a delivery. After being advised of and waiving his constitutional rights, he explained he was a heroin user who purchased heroin in packages to sell to continue supporting his drug habit. On September 8, 2000, defendant pled guilty to possession of heroin for sale (Health & Saf. Code, § 11351) and admitted having two prior strike convictions. On November 9, 2000, he was sentenced to 25 years to life in prison.

On November 13, 2012, defendant filed a petition to recall his sentence and be resentenced pursuant to the Act. He represented he (1) was statutorily eligible for such relief; (2) had a strike record consisting of a 1985 conviction for robbery (in which he handed the clerk a note to complete the crime and which did not involve a weapon) and a 1992 conviction for first degree burglary; (3) was 59 years old; (4) had not incurred any disciplinary rule infractions since entering the custody of the California Department of Corrections and Rehabilitation in November 2000; (5) had availed himself of academic programs and earned his GED in November 2005; (6) had been actively participating in Narcotics Anonymous (NA) since October 2006; and (7) had been actively participating in Victim Awareness Offender's Program (VAOP) since February 2012.[2] With respect to postrelease plans, defendant stated he had no definite plans for residency, but anticipated transitional housing acceptance letters from various programs throughout California. If none were forthcoming, he expected to reside at the Madera Rescue Mission until he could arrange to relocate to Fresno, where he intended to enroll in a truck driving school. Defendant conceded his criminal history was extensive, but noted

---

[2] Defendant submitted numerous favorable "chronos" and other documents in support of his claims.

his crimes were primarily property crimes and his criminal history was attributable to his drug use, which he had now addressed.

The People opposed the petition. They implicitly conceded defendant was not disqualified from resentencing under the Act, but argued he should not be resentenced because doing so would result in an unreasonable risk of danger to public safety. The People pointed to defendant's eight felony and 11 misdemeanor convictions dating back to 1972; the fact one of his strike priors was a robbery, which by its nature was violent;[3] the length and number of his prior prison commitments and number of parole violations; the fact that, although the strike offenses were from 1985 and 1992, defendant led a continuous life of crime before and after those convictions; and the uncertainty of defendant's parole plans. The People acknowledged defendant's lack of prison disciplinary record and the fact he had completed numerous vocational/job training, substance abuse, and academic classes, and agreed he had made commendable gains while in prison. They argued, however, that his "abysmal" criminal record and over 20 years of using drugs and stealing could not be overlooked; moreover, he had never demonstrated an ability to be law abiding or employed. They asserted he was ill equipped to return to society, had no real parole plan, would be unable to support himself, and was likely to reoffend if released.

Defendant responded by writing a letter to the court in which he apologized for his past criminal conduct. He again pointed to his lack of in-prison disciplinary record and participation in self-help groups such as NA. He also detailed steps he intended to take to obtain housing and employment, should he be released. In his formal response, he argued he did not have a long or consistent history of violence, and pointed to his record

---

**3**      Due to the age of the convictions, the People did not have any information about the circumstances of the prior strike cases.

4.

of rehabilitation. He asserted there were insufficient facts for the court to find he posed an unreasonable risk of danger to public safety.

The petition was heard on August 2, 2013.[4] The court invited defense counsel to be heard first. When counsel said everything had been presented in the moving papers and he would prefer to respond to whatever the People said unless there was something the court needed to have addressed, the court confirmed it was to consider the original petition and exhibits prepared by defendant before counsel was appointed, together with the defense's response and appended documents. Counsel then argued that although defendant had a lengthy prior record, this was "somewhat natural" for a third strike offender, and defendant's serious and/or violent crimes occurred some time ago. Counsel emphasized defendant had been a model prisoner with no disciplinary violations, and had done many things toward rehabilitation. Counsel also noted defendant had been assessed by the prison itself as being a low risk to reoffend. Counsel argued defendant had done everything he could possibly do, and the People had not presented any evidence to show he was a current risk of danger to the public safety.

Asked by the court whether "risk of danger to the public safety" was limited to physical safety, as in violent crimes, or included safety from having other property crimes perpetrated against the public, defense counsel argued "dangerousness" and "risk" were key. He analogized the situation to parole cases dealing with life prisoners, and noted those cases involved murderers and so were concerned with whether those prisoners were going to commit such crimes again. Counsel argued risk of danger and public safety meant more than committing petty theft or second degree burglary, and argued concern with risk of commission of a violent crime would be in line with the Act's amendments to the three strikes law, because the third strike now had to be a serious or violent felony.

---

[4] The judge who imposed defendant's third strike sentence was no longer on the bench, so the matter was heard by a different judge. (See § 1170.126, subd. (j).)

5.

The prosecutor acknowledged defendant had no disciplinary record while in prison and a good record of attendance in rehabilitation programs. He argued there was a difference, however, between one's behavior in a structured setting such as prison and how one behaves outside of prison. He asserted defendant's criminal history showed that defendant had been sent to prison many times before, and each time he got out, he committed new crimes. The prosecutor argued the term "public safety" encompassed the safety of one's belongings, but in defendant's case, there was additionally an escalation in how property was obtained. The prosecutor argued that between 1972, when defendant was 19 years old, and 2000, defendant was in prison or in jail or violating some law. The prosecutor also argued defendant's parole plans (or lack thereof) were relevant, and he expressed concern over releasing an individual who had committed crimes over decades, just because he behaved in prison.

The court asked defense counsel to address the fact defendant seemed to have a problem complying with the law when not in custody. Counsel responded that the three strikes law was a criminal statute, and if everyone's petition for resentencing was going to be denied because they committed serious and violent crimes, then resentencing should not be included in the law. Thus, the standard was not denial based just on the prior criminal record. Counsel acknowledged the prior record was a relevant factor, but argued the court had to consider the totality of the picture. He emphasized defendant's good behavior during his time in custody, and argued it was easy to get "written up" for something in prison, yet defendant had no disciplinary chronos. Counsel argued defendant's prior record was not evidence defendant was currently a danger. As for parole plans, counsel stated he was familiar with Madera Rescue Mission and that, while they would not conclusively accept defendant until he was out of custody and had interviewed with them, defendant would be a suitable candidate for their program. Counsel pointed out defendant had also obtained information for workforce programs and other agencies, and that he had put time and effort into doing that on his own while still

6.

in prison. The court then confirmed directly with defendant that enrollment in a specific truck driving school was still something he wanted to pursue.

This ensued:

> "[THE COURT:] I am directed by the terms of the Prop 36 modification to the Three Strikes Law to consider criminal history including the types of crimes, the extent of injuries to the victims, the length of prior prison commitments, and the remoteness of crimes, and I do have those issues in mind. So I can't just start with the time when he went into custody and his conduct since then nor can I just limit it to the time before he got into custody.

> "Looking at his in custody time, I don't think that, on the face of it, I would be asking more of [defendant]. He … has behaved himself, he has followed the rules as far as I can see. I don't have any reason to believe otherwise. He has done the program, he's done the Narcotics Anonymous program there, he obtained his GED certificate in 2005, he did go through the Victim Awareness Offenders Program, the VAOP program.

> "And then in the annual review …, it indicates that no serious disciplinary action during his time there. So I think he has done well to the extent that he could do well during his time in custody.

> "He has a history, as I count them of eleven misdemeanors and the eight felonies, and that includes juvenile actions as well. It appears to me that … [defendant] has had difficulty in complying with the rules.

> "[Defense counsel] has indicated that it's not easy to comply with the rules while in custody, and I understand that and appreciate that.

> "[Defense counsel] also pointed out that in order to reintegrate into society, it's not easy to do that either. And it appears to me that [defendant] has not been, by his own history here, successful in that regard. I don't have any appreciable periods of time when he's been without a criminal conviction.

> "[DEFENSE COUNSEL]: Your Honor, … I believe he was free of custody from 1979 to 1984.

> "THE COURT: Was he in custody during that period of time?

> "[DEFENSE COUNSEL]: No, he was out of custody.

7.

"THE DEFENDANT: I was employed, your Honor. I have a Social Security statement from 2006 which shows I was employed those years, in 1979 to early 1984.

"THE COURT: Okay. So approximately a 5-year period. All right. Then, let me go back there just a moment. I want to look at the records on that. All right. [¶] Any comment in that regard by the People? [¶] … [¶]

"[PROSECUTOR]: I'll submit on that, your Honor. I don't show any record that he was in custody at that time. [¶] … [¶]

"[DEFENSE COUNSEL]: I'm sorry, your Honor, the last thing I want to note. Before his last yearly review on his controlled substance, he was classified as a low risk on that.

"THE COURT: All right. Thank you. And I think you mentioned that .… [¶] And as mentioned by the People, we've seen an escalation even without crime during that period 1979 to 1984, the fact that we have the felony first degree burglary in 1992.

"So I'm not going to find that he does not present a danger to reoffend or to present a danger to society or to safety of the public. I find that there is a reasonable risk of danger if he would be released on that basis.

"As noted by the People, there has been an escalation in the type of crime .… [¶] … And looking at whether the circumstances of his commitment offenses were considered, I have considered those. And his offenses are of concern because it has escalated.

"If it was just a crime, not serious or violent, we wouldn't be here in the first place but he's got a consistent series of crimes during the time he's out. The greatest period of which he was without crime was the one that was just mentioned by the defense. So I'm not ordering that he be resentenced."

Defense counsel then sought clarification whether the court interpreted "unreasonable risk to the public safety" to mean a risk that defendant commit any crime, or serious or violent crimes. The court responded: "My interpretation is that to the extent that he's committing any crime, it's something that I consider to whether — to the issue whether he would pose an unreasonable risk of danger to the public safety." When counsel suggested the court was putting a great deal more weight on defendant's prior

8.

record than on his in-custody record, the court stated: "Well, I don't know how you want to quantify that, Counsel. I'm considering both his time in custody … and then his history in crimes committed …. So upon balance, it appears to me that it would be an unreasonable risk to the danger to the public safety for the resentencing." When counsel asked whether the court was "not giving any weight to the prison's evaluation — the people that know [defendant] the best, that they consider him a low risk to reoffend," the court responded it had considered that as well.

## DISCUSSION

Defendant says he is entitled to a remand for reconsideration of his petition, because the sentencing court (1) applied the wrong legal standard; (2) misallocated the burden of proof; (3) abused its discretion in considering the evidence, because it engaged in unfounded speculation without obtaining an expert evaluation; and (4) abused its discretion by denying relief based solely on defendant's remote history of recidivism. In conjunction with the last claim, defendant says the court's ruling is not supported by sufficient evidence, because his remote recidivist behavior did not preponderate over the extensive evidence of his more recent exemplary behavior and accomplishments. We disagree that remand is required.

### I[*]

#### STANDARD OF PROOF

In order to be eligible for resentencing as a second strike offender under the Act, the inmate petitioner must satisfy the three criteria set out in subdivision (e) of section 1170.126.[5] (*People v. Superior Court* (*Martinez*) (2014) 225 Cal.App.4th 979,

---

[*]     See footnote, *ante*, page 1.

[5]     "An inmate is eligible for resentencing if: [¶] (1) The inmate is serving an indeterminate term of life imprisonment imposed pursuant to paragraph (2) of subdivision (e) of Section 667 or subdivision (c) of Section 1170.12 for a conviction of a felony or felonies that are not defined as serious and/or violent felonies by subdivision (c)

9.

989.) If the inmate satisfies all three criteria, as did defendant, he or she "shall be resentenced [as a second strike offender] unless the court, in its discretion, determines that resentencing the [inmate] would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).) In exercising this discretion, "the court may consider: [¶] (1) The [inmate's] criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶] (2) The [inmate's] disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (*Id*., subd. (g).)

The plain language of subdivisions (f) and (g) of section 1170.126 calls for an exercise of the sentencing court's discretion. "'Discretion is the power to make the decision, one way or the other.' [Citation.]" (*People v. Carmony* (2004) 33 Cal.4th 367, 375.) "Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]' [Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125; see *People v. Williams* (1998) 17 Cal.4th 148, 162 [abuse-of-discretion review asks whether ruling in question falls outside bounds of reason under applicable law and relevant facts].)

---

of Section 667.5 or subdivision (c) of Section 1192.7. [¶] (2) The inmate's current sentence was not imposed for any of the offenses appearing in clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12. [¶] (3) The inmate has no prior convictions for any of the offenses appearing in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clause (iv) of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12." (§ 1170.126, subd. (e).)

10.

"In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, '"[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination … will not be set aside on review."' [Citation.] Second, a '"decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.'"' [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony*, *supra*, 33 Cal.4th at pp. 376-377.)

"Because 'all discretionary authority is contextual' [citation], we cannot determine whether a trial court has acted irrationally or arbitrarily … without considering the legal principles and policies that should have guided the court's actions." (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377.) "An abuse of discretion is shown when the trial court applies the wrong legal standard. [Citation.]" (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733.)

Defendant suggests that because a trial court's determination whether to resentence an eligible inmate under the Act is akin to the determination whether a prisoner serving a life term should be released on parole, "perhaps de novo review is appropriate." In such parole cases, the governing statutes and regulations give parole applicants "an expectation that they will be granted parole unless the [parole authority] finds, in the exercise of its discretion, that they are unsuitable for parole in light of the circumstances specified by statute and by regulation.' [Citation.]" (*In re Shaputis* (2008) 44 Cal.4th 1241, 1258.) Article V, section 8, subdivision (b) of the California Constitution gives the Governor the power to review the parole authority's decision. "Although 'the Governor's decision must be based upon the same factors that restrict the [parole authority] in rendering its parole decision' [citation], the Governor undertakes an independent, de novo review of the inmate's suitability for parole. [Citation.]"

(*Shaputis*, *supra*, at p. 1258.) Appellate review is then limited to "the highly deferential 'some evidence' standard …." (*In re Lawrence* (2008) 44 Cal.4th 1181, 1190.) "[B]ecause the core statutory determination entrusted to the [parole authority] and the Governor is whether the inmate poses a current threat to public safety, the standard of review properly is characterized as whether 'some evidence' supports the conclusion that the inmate is unsuitable for parole because he or she currently is dangerous." (*Id*. at p. 1191.)

Defendant fails to convince us a decision whether to resentence under the Act is sufficiently similar to a decision by the parole authority so as to mandate our independent review as if we were in a position similar to the Governor. The California Constitution gives the state's executive specific powers of review over parole decisions. (Cal. Const., art. V, § 8, subd. (b).) At the time that constitutional provision was adopted, courts applied the "some evidence" test directly to the decisions of the parole authority. (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 626.) In light of the "fundamental[] differen[ce]" between the Governor's power and that of the parole authority (*In re Masoner* (2009) 172 Cal.App.4th 1098, 1106, disapproved on another ground in *In re Prather* (2010) 50 Cal.4th 238, 252-253), even if we viewed a resentencing decision under the Act as being similar to the parole authority's determination whether to grant parole, we would not view the role of an appellate court as similar to that of the Governor.

Anticipating we might so conclude, defendant points to the holding of Division Three of the Second District Court of Appeal, that where a court's discretion under section 1170.126, subdivision (f) is concerned, the People bear the burden of proving "dangerousness" by a preponderance of the evidence. (*People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1301-1305 & fn. 25 (*Kaulick*); see Evid. Code, § 115.) That court determined this is so — and *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*) and its progeny do not apply — because "dangerousness is not a factor which enhances the sentence imposed when a defendant is resentenced under the Act;

12.

instead, dangerousness is a hurdle which must be crossed in order for a defendant to be resentenced at all." (*Kaulick*, *supra*, at p. 1303.)

Based on the foregoing, defendant appears to reason that because the People bear the burden of proving "dangerousness" by a preponderance of the evidence, we must employ the substantial evidence standard in reviewing a trial court's denial of a resentencing petition. The Attorney General disagrees and argues that under the clear language of section 1170.126, we review for abuse of discretion. The Attorney General concludes: "[T]he trial court has discretion to determine an inmate's risk of danger to public safety based on evidence the court deems relevant. And just like other sentencing decisions, the trial court's exercise of its discretion in the section 1170.126 context should be supported by stated factors and reviewed for an abuse of discretion."

We agree we review a trial court's ultimate decision whether to resentence an inmate under the Act — its determination whether "resentencing the petitioner would pose an unreasonable risk of danger to public safety" (§ 1170.126, subd. (f)) — for abuse of discretion. If there is no evidence in the record to support the decision, the decision constitutes an abuse of discretion. (See *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1066.) As the Attorney General's reference to the trial court's determination being based on *evidence* and supported by *stated factors* shows, the questions arise which party must produce such evidence, and to what degree of certainty, and what level of support — what standard of proof — is required for a trial court to rely on such evidence or factors? (See *People v. Mower* (2002) 28 Cal.4th 457, 476.)

We agree with *Kaulick* that the applicable standard is preponderance of the evidence.[6] This does not, however, mean the trial court must apply that standard in

---

[6]    We have previously discussed *Kaulick* in the context of the initial determination whether an inmate is eligible for resentencing under the Act. (*People v. Blakely* (2014) 225 Cal.App.4th 1042, 1058, 1060-1061; *People v. Osuna* (2014) 225 Cal.App.4th 1020, 1033, 1039-1040.) Nothing we say here should be taken as disagreement with or

making its ultimate determination whether to resentence a petitioner, or we must review that determination for substantial evidence.**7** Nor does it mean evidence of dangerousness must preponderate over evidence of rehabilitation for resentencing to be denied. Instead, considering the language of subdivisions (f) and (g) of section 1170.126, we conclude it means the People have the burden of establishing, by a preponderance of the evidence, facts from which a determination resentencing the petitioner would pose an unreasonable risk of danger to public safety can reasonably be made.**8** Stated another way, evidence showing a petitioner poses a risk of danger to public safety must be proven by the People by a preponderance. The reasons a trial court finds resentencing would pose an unreasonable risk of danger, or its weighing of evidence showing dangerousness versus evidence showing rehabilitation, lie within the court's discretion. The ultimate determination that resentencing would pose an unreasonable risk of danger is a discretionary one. While the determination must be supported by record evidence established by a preponderance, the trial court need not itself find an unreasonable risk of

---

modification of those opinions. We deal here with a different aspect of the retrospective portion of the Act and a subject not before us in our prior cases.

**7** The substantial evidence test applies to an appellate court's review of findings made under the preponderance of the evidence standard. (*People v. Wong* (2010) 186 Cal.App.4th 1433, 1444.) Under that test, the appellate court reviews the record in the light most favorable to the challenged finding, to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could make the finding by a preponderance of the evidence. The appellate court "resolve[s] all conflicts in the evidence and questions of credibility in favor of the [finding], and … indulge[s] every reasonable inference the [trier of fact] could draw from the evidence. [Citation.]" (*Ibid.*)

**8** We do not interpret the Attorney General's argument as taking serious issue with the notion that whatever burden exists is allocated to the prosecution. Courts and parties have assumed the burden is on the People (e.g., *People v. Flores* (2014) 227 Cal.App.4th 1070, 1075; *Kaulick*, *supra*, 215 Cal.App.4th at p. 1301, fn. 25), and such allocation is in harmony with the language of section 1170.126, subdivision (f) that an eligible petitioner "shall be resentenced … unless" the court makes the required determination.

14.

danger by a preponderance of the evidence. (See *In re Robert L.*, *supra*, 21 Cal.App.4th at pp. 1065-1067 [discussing abuse of discretion and preponderance of the evidence standards].)

Such an interpretation is consistent with California's noncapital sentencing scheme.[9] Under the determinate sentencing law (DSL) as it existed prior to *Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*), "three terms of imprisonment [were] specified by statute for most offenses. The trial court's discretion in selecting among [those] options [was] limited by section 1170, subdivision (b), which direct[ed] that 'the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime.'" (*People v. Black* (2007) 41 Cal.4th 799, 808, fn. omitted.) Trial courts had "broad discretion" to impose the lower or upper term instead of the middle term of imprisonment (*People v. Scott* (1994) 9 Cal.4th 331, 349), and generally were required by the statutes and sentencing rules to state reasons for their discretionary sentencing choices (*ibid.*). Such reasons had to be "supported by a preponderance of the evidence in the record" and reasonably related to the particular sentencing determination. (*Ibid.*; see former Cal. Rules of Court, rule 4.420(b).) Even after the DSL was reformed and amended in response to *Cunningham*, so as to eliminate judicial factfinding in selection of the appropriate term when three possible prison terms are specified by statute, establishment of facts by a preponderance of the evidence remains necessary with respect to certain discretionary sentencing decisions. (See *In re Coley* (2012) 55 Cal.4th 524, 557-558.)[10]

---

**9** The determination of the appropriate penalty in a capital case "'is "essentially moral and normative …, and therefore … there is no burden of proof or burden of persuasion. [Citation.]" [Citation.]' [Citations.]" (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1362.)

**10** After *Cunningham* concluded the DSL violated a defendant's Sixth Amendment right to a jury trial (*Cunningham*, *supra*, 549 U.S. at p. 281), the Legislature amended section 1170 so that now "(1) the middle term is no longer the presumptive term absent

The Attorney General points to *People v. Sandoval* (2007) 41 Cal.4th 825, 850-851, in which the California Supreme Court stated that, in making its discretionary sentencing choices post-*Cunningham*, "the trial court need only 'state [its] reasons' [citation]; it is not required to identify aggravating and mitigating factors, *apply a preponderance of the evidence standard*, or specify the 'ultimate facts' that 'justify[] the term selected.' [Citations.] Rather, the court must 'state in simple language the primary factor or factors that support the exercise of discretion.' [Citation.]" (Italics added.)

The trial court's ultimate determination when considering a petition for resentencing under section 1170.126 is analogous to an evaluation of the relative weight of mitigating and aggravating circumstances. Such an evaluation "is not equivalent to a factual finding." (*People v. Black*, *supra*, 41 Cal.4th at p. 814, fn. 4.) It follows, then, that the trial court need not apply a preponderance of the evidence standard, in that it need not find resentencing the petitioner would, more likely than not, pose an unreasonable risk of danger to public safety. (See *Kaulick*, *supra*, 215 Cal.App.4th at p. 1305, fn. 28 [preponderance standard means "'more likely than not'"].)

*Kaulick* found the prosecution bears the burden of establishing "dangerousness" by a preponderance of the evidence against a claim the *Apprendi* line of cases requires proof beyond a reasonable doubt. (*Kaulick*, *supra*, 215 Cal.App.4th at pp. 1301-1302.) As a result, it had no real occasion to address the interplay between the burden of proof and the trial court's exercise of discretion as that issue is presented here, or to clarify whether the prosecution is required to establish "dangerousness" in the sense of *facts* upon which the trial court may base the ultimate determination resentencing a petitioner

---

aggravating or mitigating facts found by the trial judge; and (2) a trial judge has the discretion to impose an upper, middle or lower term based on reasons he or she states." (*People v. Wilson* (2008) 164 Cal.App.4th 988, 992.) Subdivision (b) of section 1170 states the court "shall select the term which, in the court's discretion, best serves the interests of justice."

would pose an unreasonable risk of danger to public safety, or in the sense of establishing that determination itself.  Nevertheless, we believe it supports our interpretation.  *Kaulick* stated, in part:  "The maximum sentence to which Kaulick, and those similarly situated to him, is subject was, and shall always be, the indeterminate life term to which he was originally sentenced.  While [the Act] presents him with an opportunity to be resentenced to a lesser term, *unless certain facts are established*, he is nonetheless still subject to the third strike sentence based on the facts established at the time he was originally sentenced.  As such, *a court's discretionary decision to decline to modify the sentence in his favor can be based on any otherwise appropriate factor (i.e., dangerousness), and such factor need not be established by proof beyond a reasonable doubt to a jury*."  (*Id*. at p. 1303, italics added.)  The court further stated:  "[I]t is the general rule in California that once a defendant is eligible for an increased penalty, the trial court, *in exercising its discretion* to impose that penalty, may rely on *factors established by a preponderance of the evidence*.  [Citation.]"  (*Id*. at p. 1305, italics added.)

To summarize, a trial court need not determine, by a preponderance of the evidence, that resentencing a petitioner would pose an unreasonable risk of danger to public safety before it can properly deny a petition for resentencing under the Act.  Nor is the court's ultimate determination subject to substantial evidence review.  Rather, its finding will be upheld if it does not constitute an abuse of discretion, i.e., if it falls within "the bounds of reason, all of the circumstances being considered.  [Citations.]"  (*People v. Giminez* (1975) 14 Cal.3d 68, 72.)  The facts or evidence upon which the court's finding of unreasonable risk is based must be proven by the People by a preponderance of the evidence, however, and are themselves subject to our review for substantial evidence.  If a factor (for example, that the petitioner recently committed a battery, is violent due to repeated instances of mutual combat, etc.) is not established by a preponderance of the evidence, it cannot form the basis for a finding of unreasonable risk.  (See *People v. Cluff* (2001) 87 Cal.App.4th 991, 998 [trial court abuses its discretion when factual findings

17.

critical to decision find no support in record]; cf. *People v. Read* (1990) 221 Cal.App.3d 685, 689-691 [where trial court erroneously determined defendant was statutorily ineligible for probation, reviewing court was required to determine whether trial court gave sufficient other reasons, supported by facts of case, for probation denial].)

## II[*]

## ALLOCATION OF BURDEN OF PROOF

Based on the fact the trial court gave defense counsel the first and last opportunities to be heard and the way in which it phrased its ruling, defendant contends the court "appears" to have incorrectly allocated the burden of proof to defendant, to prove he did *not* pose a risk of danger to public safety. This, defendant says, was an abuse of discretion.

"As a general rule, we presume that the trial court has properly followed established law. [Citations.] This presumption, however, does not apply 'where the law in question was unclear or uncertain when the lower court acted.' [Citation.]" (*People v. Diaz* (1992) 3 Cal.4th 495, 567.) *Kaulick* was decided slightly more than three months before the hearing on defendant's petition. We presume the court was aware of that decision. Moreover, the People's opposition to the petition, which the court clearly had received, stated the burden of proof as preponderance of the evidence. In his response to the People's opposition, defendant argued there were "insufficient facts" to allow the court to find defendant posed an unreasonable risk of danger to public safety, and argued the interests of justice would be served by resentencing him based on his rehabilitation record and "the lack of evidence" he posed an unreasonable risk to public safety. At the hearing, defendant argued the People had not presented any evidence to show he was currently a risk of danger to public safety.

---

[*]     See footnote, *ante*, page 1.

18.

In light of the totality of its comments and the argument before it, we conclude the trial court properly allocated the burden of proof to the People and determined, in an exercise of its discretion, that resentencing defendant would pose an unreasonable risk of danger to public safety.[11]

### III

### FAILURE TO OBTAIN EXPERT EVALUATION

Defendant says resentencing him as a second strike offender would have released him on postrelease community supervision (PRCS). (See § 3451; *People v. Tubbs* (2014) 230 Cal.App.4th 578, 585-586; *People v. Espinoza* (2014) 226 Cal.App.4th 635, 637-638.) Thus, he argues, the court was confronted with a situation similar to the decision whether to grant parole to a life prisoner (see § 3041); in that context, current psychological evaluations are generally most relevant to an assessment of current dangerousness (see *In re Lawrence* (2008) 44 Cal.4th 1181, 1223-1224), and the court here erred by failing to enlist, sua sponte, the assistance of an expert. Defendant says the court abused its discretion by engaging in unfounded speculation concerning, and relying on its own nonexpert estimation of, defendant's psychological state with respect to whether defendant was still prone to reoffending outside the custodial setting.

Defendant cites Evidence Code section 730 for the proposition an expert may be appointed by a court sua sponte for the purpose of obtaining an impartial expert opinion.[12] (See *Mercury Casualty Co. v. Superior Court* (1986) 179 Cal.App.3d 1027,

---

[11] That the court gave defense counsel the first opportunity to be heard does not suggest otherwise. As defense counsel implicitly acknowledged at the hearing, defendant was the moving party.

[12] Evidence Code section 730 provides, in relevant part: "When it appears to the court, at any time before or during the trial of an action, that expert evidence is or may be required by the court …, the court on its own motion … may appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an

1032.)  That statute "does not authorize the appointment of experts after trial in connection with sentencing proceedings."  (*People v. Stuckey* (2009) 175 Cal.App.4th 898, 905; *id*. at p. 913.)  Regardless of whether a proceeding under section 1170.126 is likened to a trial or is part of a sentencing proceeding, "a trial court has inherent power, independent of statute, to exercise its discretion and control over all proceedings relating to the litigation before it [citation]," including "the power to obtain evidence upon which the judgment of the court may rest [citation]."  (*Johnson v. Banducci* (1963) 212 Cal.App.2d 254, 260; see *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967.)  Thus, it appears a court *could* appoint an expert, on its own motion, to conduct an evaluation concerning the risk of danger currently posed to public safety by an inmate seeking resentencing under the Act.

However, "[t]he decision on the need for the appointment of an expert lies within the discretion of the trial court and the trial court's decision will not be set aside absent an abuse of that discretion.  [Citations.]"  (*People v. Gaglione* (1994) 26 Cal.App.4th 1291, 1304, disapproved on other grounds in *People v. Martinez* (1995) 11 Cal.4th 434, 452 & *People v. Levesque* (1995) 35 Cal.App.4th 530, 539; accord, *People v. Vatelli* (1971) 15 Cal.App.3d 54, 61; see *In re Eric A.* (1999) 73 Cal.App.4th 1390, 1394, fn. 4.)  Whatever the similarities between the decisions whether to resentence under the Act and to grant parole to an inmate serving a life term, appointment of an expert did not fall outside the bounds of reason in this case.  The question before the court was whether resentencing defendant would pose an unreasonable risk of danger to public safety.  Given the information already before the court — all of which the court considered — the court reasonably could make the required determination itself, without the input of an expert.  As has been stated in the context of a claim the word "unreasonable" is impermissibly

expert at the trial of the action relative to the fact or matter as to which the expert evidence is or may be required."

20.

vague, "Surely a superior court judge is capable of exercising discretion, justly applying the public safety exception, and determining whether a lesser sentence would pose an unreasonable risk of harm to the public safety. [Citation.]" (*People v. Flores*, *supra*, 227 Cal.App.4th at p. 1075.)[13]

## IV*

### DENIAL OF PETITION

Next, defendant contends the trial court abused its discretion by denying the petition. He says the court denied relief based solely on defendant's remote history of recidivism and failed to apply the preponderance of the evidence standard, and the order is not supported by a preponderance of the evidence because the evidence of defendant's remote recidivist behavior did not preponderate over the "significant and extensive" evidence of his exemplary current and recent behavior.

As we previously explained, the trial court was not required to apply the preponderance of the evidence standard, nor was evidence of risk of danger required to preponderate over evidence of rehabilitation in order for resentencing to be denied. The People met their burden of proving, by a preponderance of the evidence, facts from which the trial court reasonably could find resentencing defendant would pose an unreasonable

---

[13]     *In re Lawrence*, *supra*, 44 Cal.4th 1181, does not hold to the contrary. In that case, the Governor reversed a parole grant in part based on negative language found in early psychiatric evaluations of the inmate that suggested the inmate's release would pose an unreasonable risk of danger to the public. (*Id*. at pp. 1190, 1223.) The California Supreme Court rejected the Governor's conclusion, stating: "[T]he passage of time is highly probative to the determination before us, and reliance upon outdated psychological reports — clearly contradicted by [the inmate's] successful participation in years of intensive therapy, a long series of reports declaring [the inmate] to be free of psychological problems and no longer a threat to public safety, and [the inmate's] own insight into her participation in this crime — does not supply some evidence justifying the Governor's conclusion that [the inmate] continues to pose a threat to public safety." (*Id*. at p. 1224.)

*        See footnote, *ante*, page 1.

risk of danger to public safety. The trial court gave due consideration to all the information before it, and so determined.[14] Defendant's record, including the fact he suffered numerous convictions over a long period of time and into his late 40's; his extensive number of parole violations for which he was returned to prison; and his inability to remain crime- or violation-free for any appreciable period of time;[15]

---

[14] The trial court correctly framed the pertinent issue as an inquiry into the risk of recidivism in general, rather than the likelihood of future violence. Words and phrases used in the Penal Code "must be construed according to the context and the approved usage of the language …." (§ 7, subd. 16.) In interpreting a ballot initiative, we afford the words used their ordinary and usual meaning. (*People v. Park* (2013) 56 Cal.4th 782, 796.) "[S]afety" has been variously defined as "the condition of being safe: freedom from exposure to danger: exemption from hurt, injury or loss" (Webster's 3d New Internat. Dict. (1986) p. 1998) and "[t]he condition of being safe; freedom from danger, risk, or injury" (American Heritage Dict. (2d college ed. 1982) p. 1084). That a crime (or criminal) can constitute a danger to public safety without being violent is too obvious to dispute (see, e.g., *People v. Hughes* (2002) 27 Cal.4th 287, 355; *People v. Villalobos* (2006) 145 Cal.App.4th 310, 317) and is recognized both by the three strikes law's inclusion as a strike, by reference to section 1192.7, subdivision (c)'s definition of a "serious felony," any first degree burglary, furnishing certain drugs to a minor, and grand theft involving a firearm (§§ 667, subd. (d)(1), 1170.12, subd. (b)(1), 1192.7, subd. (c)(18), (24) & (26)), and by section 1170.126, subdivision (e)(2)'s disqualification from eligibility for resentencing persons convicted of certain narcotics offenses (see §§ 667, subd. (e)(2)(C)(i), 1170.12, subd. (c)(2)(C)(i)). Although the ballot materials concerning Proposition 36 focused on violent criminals, uncodified section 7 of the Act provides: "This act is an exercise of the public power of the people of the State of California for the protection of the health, safety, and welfare of the people of the State of California, and shall be liberally construed to effectuate those purposes." (Italics omitted.) To condition resentencing denials upon the likelihood of future violence would run contrary to the language of section 1170.126, subdivision (f) and voters' intent, and would not effectuate the purposes of the Act.

[15] At the hearing, defendant represented, and the trial court accepted, that defendant remained free of custody from 1979 to 1984, during which time he was employed. The probation officer's report prepared in conjunction with the section 1170.126 hearing showed, however, that defendant was convicted of three misdemeanors, for which he received some jail time, and an offense for which he received summary probation and community service, during that period. Moreover, he committed the robbery that constituted one of his strike priors in late 1984.

reasonably supports the conclusion — even in light of a perfect prison behavior record — that, although defendant thrives in prison, he does the opposite when released.[16] Accordingly, the trial court's ruling fell within the bounds of reason.

## V[*]

### SECTION 1170.18, SUBDIVISION (C)

On November 4, 2014, voters enacted Proposition 47, "the Safe Neighborhoods and Schools Act" (hereafter Proposition 47). It went into effect the next day. (Cal. Const., art. II, § 10, subd. (a).) Insofar as is pertinent here, Proposition 47 renders misdemeanors certain drug- and theft-related offenses that previously were felonies or "wobblers," unless they were committed by certain ineligible defendants. Proposition 47 also created a new resentencing provision — section 1170.18 — by which a person currently serving a felony sentence for an offense that is now a misdemeanor, may petition for a recall of that sentence and request resentencing in accordance with the offense statutes as added or amended by Proposition 47. (§ 1170.18, subd. (a).) A person who satisfies the criteria in subdivision (a) of section 1170.18 shall have his or her sentence recalled and be "resentenced to a misdemeanor … unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (*Id.*, subd. (b).)[17]

Hidden in the lengthy, fairly abstruse text of the proposed law, as presented in the official ballot pamphlet — and nowhere called to voters' attention — is the provision at

---

[16] In light of defendant's demonstrated inability to comply with the terms of parole supervision, the fact he would be subject to mandatory PRCS upon release (see *People v. Tubbs*, *supra*, 230 Cal.App.4th at pp. 585-586; *People v. Espinoza*, *supra*, 226 Cal.App.4th at pp. 637-638) does not alter our analysis or conclusion.

[*] See footnote, *ante*, page 1.

[17] Proposition 47 also created a process whereby eligible persons who have already completed their sentences may have the particular conviction or convictions designated as misdemeanors. (§ 1170.18, subds. (f), (g).)

23.

issue in the present appeal.  Subdivision (c) of section 1170.18 provides:  "As used throughout this Code, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667."  Section 667, subdivision (e)(2)(C)(iv) lists the following felonies, sometimes called "super strike" offenses:

> "(I) A 'sexually violent offense' as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code.

> "(II) Oral copulation with a child who is under 14 years of age, and who is more than 10 years younger than he or she as defined by Section 288a, sodomy with another person who is under 14 years of age and more than 10 years younger than he or she as defined by Section 286, or sexual penetration with another person who is under 14 years of age, and who is more than 10 years younger than he or she, as defined by Section 289.

> "(III) A lewd or lascivious act involving a child under 14 years of age, in violation of Section 288.

> "(IV) Any homicide offense, including any attempted homicide offense, defined in Sections 187 to 191.5, inclusive.

> "(V) Solicitation to commit murder as defined in Section 653f.

> "(VI) Assault with a machine gun on a peace officer or firefighter, as defined in paragraph (3) of subdivision (d) of Section 245.

> "(VII) Possession of a weapon of mass destruction, as defined in paragraph (1) of subdivision (a) of Section 11418.

> "(VIII) Any serious and/or violent felony offense punishable in California by life imprisonment or death."

The question is whether section 1170.18, subdivision (c) now limits a trial court's discretion to deny resentencing under the Act to those cases in which resentencing the

defendant would pose an unreasonable risk he or she will commit a new "super strike" offense.  Defendant says it does.  The People disagree.  We agree with the People.**18**

"'In interpreting a voter initiative …, we apply the same principles that govern statutory construction.  [Citation.]'  [Citation.]  '"The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law.  [Citations.]"'  [Citation.]"  (*People v. Superior Court* (*Cervantes*) (2014) 225 Cal.App.4th 1007, 1014.)  Thus, in the case of a provision adopted by the voters, "their intent governs.  [Citations.]"  (*People v. Jones* (1993) 5 Cal.4th 1142, 1146.)

To determine intent, "'"we look first to the words themselves.  [Citations.]"'" (*People v. Superior Court* (*Cervantes*), *supra*, 225 Cal.App.4th at p. 1014.)  We give the statute's words "'a plain and commonsense meaning.  [Citation.]  We do not, however, consider the statutory language "in isolation."  [Citation.]  Rather, we look to "the entire substance of the statute … in order to determine the scope and purpose of the provision ….  [Citation.]"  [Citation.]  That is, we construe the words in question "'"in context, keeping in mind the nature and obvious purpose of the statute .…'  [Citation.]" [Citation.]  We must harmonize "the various parts of a statutory enactment … by considering the particular clause or section in the context of the statutory framework as a whole."  [Citations.]'  [Citation.]"  (*People v. Acosta* (2002) 29 Cal.4th 105, 112.)  We "accord[] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose.  A construction making some words surplusage is to be avoided.… [S]tatutes or statutory sections relating to the same subject must be harmonized, both

---

**18**     We solicited supplemental briefing concerning Proposition 47.  Among the questions we asked counsel to answer were whether defendant met the criteria for resentencing under section 1170.18 and, if so, whether we needed to determine the applicability, if any, of section 1170.18, subdivision (c) to resentencing proceedings under section 1170.126.  We are satisfied it is appropriate for us to reach the issue of applicability regardless of whether defendant might obtain resentencing under Proposition 47.

internally and with each other, to the extent possible.  [Citations.]"  (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.)

"'"'When statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it." [Citation.]'  [Citation.]"  (*People v. Hendrix* (1997) 16 Cal.4th 508, 512.)  On its face, "[a]s used throughout this Code," as employed in section 1170.18, subdivision (c), clearly and unambiguously refers to the Penal Code, not merely section 1170.18 or the other provisions contained in Proposition 47.  (See *People v. Bucchierre* (1943) 57 Cal.App.2d 153, 164-165, 166; see also *Marshall v. Pasadena Unified School Dist.* (2004) 119 Cal.App.4th 1241, 1254-1255; *People v. Vasquez* (1992) 7 Cal.App.4th 763, 766.)

This does not mean, however, that the definition contained in section 1170.18, subdivision (c) must inexorably be read into section 1170.126, subdivision (f).  (Cf. *Marshall v. Pasadena Unified School Dist.*, *supra*, 119 Cal.App.4th at p. 1255.)  "The literal language of a statute does not prevail if it conflicts with the lawmakers' intent .… [Citations.]"  (*People v. Osuna*, *supra*, 225 Cal.App.4th at pp. 1033-1034.)  "'The apparent purpose of a statute will not be sacrificed to a literal construction.' [Citation.]"  (*Cossack v. City of Los Angeles* (1974) 11 Cal.3d 726, 733.)  Rather, "the literal meaning of a statute must be in accord with its purpose."  (*People v. Mohammed* (2008) 162 Cal.App.4th 920, 927.)  "[I]t is settled that the language of a statute should not be given a literal meaning if doing so would result in absurd consequences that the [voters] did not intend" (*In re Michele D.* (2002) 29 Cal.4th 600, 606), or would "frustrate[] the manifest purposes of the legislation as a whole .…"  (*People v. Williams* (1992) 10 Cal.App.4th 1389, 1393.)  "To this extent, therefore, intent prevails over the letter of the law and the letter will be read in accordance with the spirit of the enactment.  [Citation.]"  (*In re Michele D.*, *supra*, 29 Cal.4th at p. 606; accord, *People v. Ledesma* (1997) 16 Cal.4th 90, 95.)

Thus, "'we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. [Citations.]' [Citation.] We also '"refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet." [Citation.]' [Citation.]" (*People v. Osuna*, *supra*, 225 Cal.App.4th at p. 1034.) We consider "the consequences that will flow from a particular interpretation" (*Dyna-Med, Inc. v. Fair Employment & Housing Com.*, *supra*, 43 Cal.3d at p. 1387), as well as "the wider historical circumstances" of the statute's or statutes' enactment (*ibid.*). "'Using these extrinsic aids, we "select the construction that comports most closely with the apparent intent of the [electorate], with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' [Citation.]" (*People v. Osuna*, *supra*, 225 Cal.App.4th at pp. 1034-1035.)

Proposition 47 and the Act address related, but not identical, subjects. As we explain, reading them together, and considering section 1170.18, subdivision (c) in the context of the statutory framework as a whole (see *People v. Acosta*, *supra*, 29 Cal.4th at p. 112; *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 658-659; *In re Cindy B.* (1987) 192 Cal.App.3d 771, 781), we conclude its literal meaning does not comport with the purpose of the Act, and applying it to resentencing proceedings under the Act would frustrate, rather than promote, that purpose and the intent of the electorate in enacting both initiative measures (see *People v. Disibio* (1992) 7 Cal.App.4th Supp. 1, 5).

As is evidenced by its title, the Act was aimed solely at revising the three strikes law. That law, as originally enacted by the Legislature, was described by us as follows:

"Under the three strikes law, defendants are punished not just for their current offense but for their recidivism. Recidivism in the

27.

commission of multiple felonies poses a danger to society justifying the imposition of longer sentences for subsequent offenses. [Citation.] The primary goals of recidivist statutes are: '… to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. This segregation and its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes. Like the line dividing felony theft from petty larceny, the point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction.' [Citation.]

"By enacting the three strikes law, the Legislature acknowledged the will of Californians that the goals of retribution, deterrence, and incapacitation be given precedence in determining the appropriate punishment for crimes. Further, those goals were best achieved by ensuring 'longer prison sentences and greater punishment' for second and third 'strikers.'" (*People v. Cooper* (1996) 43 Cal.App.4th 815, 823-824.)[19]

A few months before the November 6, 2012, election, the California Supreme Court observed: "One aspect of the [three strikes] law that has proven controversial is that the lengthy punishment prescribed by the law may be imposed not only when … a defendant [who has previously been convicted of one or more serious or violent felonies] is convicted of another serious or violent felony but also when he or she is convicted of any offense that is categorized under California law as a felony. This is so even when the current, so-called triggering, offense is nonviolent and may be widely perceived as relatively minor. [Citations.]" (*In re Coley*, *supra*, 55 Cal.4th at pp. 528-529.)

---

**19** The foregoing applies equally to the three strikes initiative measure that added section 1170.12 to the Penal Code. The following statement of intent preceded the text of the statute in Proposition 184, which was approved by voters on November 8, 1994: "'It is the intent of the People of the State of California in enacting this measure to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses.'" (See Historical and Statutory Notes, 50C West's Ann. Pen. Code (2004 ed.) foll. § 1170.12, p. 239.)

Clearly, by approving the Act, voters resolved this controversy in favor of strike offenders. Thus, one of the "Findings and Declarations" of the Act stated the Act would "[r]estore the Three Strikes law to the public's original understanding by requiring life sentences only when a defendant's current conviction is for a violent or serious crime." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) text of proposed law, § 1, p. 105.) Nowhere, however, do the ballot materials for the Act suggest voters intended essentially to open the prison doors to existing third strike offenders in all but the most egregious cases, as would be the result if the definition of "'unreasonable risk of danger to public safety'" contained in section 1170.18, subdivision (c) were engrafted onto resentencing proceedings under section 1170.126, subdivision (f). That voters did *not* intend such a result is amply demonstrated by the fact an indeterminate life term remains mandatory under the Act for a wide range of current offenses even if the offender does not have a prior conviction for a "super strike" offense (§§ 667, subd. (e)(2), 1170.12, subd. (c)(2)), and that an inmate is rendered ineligible for resentencing under section 1170.126 for an array of reasons beyond his or her having suffered such a prior conviction (§ 1170.126, subd. (e)(2)).

The Act clearly placed public safety above the cost savings likely to accrue as a result of its enactment. Thus, as we previously observed, uncodified section 7 of the Act provides: "This act is an exercise of the public power of the people of the State of California *for the protection of the health, safety, and welfare of the people of the State of California*, and shall be liberally construed to effectuate those purposes." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012), *supra*, text of proposed law, p. 110, original italics omitted, italics added.) As we explained in *People v. Osuna*, *supra*, 225 Cal.App.4th at page 1036, "Although the Act 'diluted' the three strikes law somewhat [citation], '[e]nhancing public safety was a key purpose of the Act' [citation]."

In contrast, Proposition 47 — while titled "the Safe Neighborhoods and Schools Act" — emphasized monetary savings. The "Findings and Declarations" state: "The

29.

people of the State of California find and declare as follows:  [¶]  The people enact the Safe Neighborhoods and Schools Act to ensure that prison spending is focused on violent and serious offenses, to maximize alternatives for nonserious, nonviolent crime, and to invest the savings generated from this act into prevention and support programs in K-12 schools, victim services, and mental health and drug treatment.  This act ensures that sentences for people convicted of dangerous crimes like rape, murder, and child molestation are not changed." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of proposed law, § 2, p. 70.)  Uncodified section 15 of the measure provides:  "This act shall be broadly construed to accomplish its purposes," while uncodified section 18 states:  "This act shall be liberally construed to effectuate its purposes." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, text of proposed law, p. 74.) Proposition 47 requires misdemeanor sentences for various drug possession and property offenses, unless the perpetrator has a prior conviction for a "super strike" offense or for an offense requiring sex offender registration pursuant to section 290, subdivision (c). (Health & Saf. Code, §§ 11350, subd. (a), 11357, subd. (a), 11377, subd. (a); §§ 459.5, subd. (a), 473, subd. (b), 476a, subd. (b), 490.2, subd. (a), 496, subd. (a), 666, subd. (b).) Section 1170.18 renders ineligible for resentencing *only* those inmates whose current offense would now be a misdemeanor, but who have a prior conviction for a "super strike" offense or for an offense requiring sex offender registration pursuant to section 290, subdivision (c).  (§ 1170.18, subds. (a), (i).)

Nowhere in the ballot materials for Proposition 47 were voters given any indication that initiative, which dealt with offenders whose current convictions would now be misdemeanors rather than felonies, had any impact on the Act, which dealt with offenders whose current convictions *would still be felonies*, albeit not third strikes.  For instance, the Official Title and Summary stated, in pertinent part, that Proposition 47 would "[r]equire[] resentencing for persons serving felony sentences for these offenses[, i.e., offenses that require misdemeanor sentences under the measure] unless court finds

30.

unreasonable public safety risk." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, official title and summary, p. 34.) In explaining what Proposition 47 would do, the Legislative Analyst stated: "This measure reduces penalties for certain offenders convicted of *nonserious and nonviolent property and drug crimes*. This measure also allows certain offenders *who have been previously convicted of such crimes* to apply for reduced sentences." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, analysis of Prop. 47 by Legis. Analyst, p. 35, italics added.) With respect to the resentencing provision, the Legislative Analyst explained:

> "This measure allows offenders *currently serving felony sentences for the above crimes*[, i.e., grand theft, shoplifting, receiving stolen property, writing bad checks, check forgery, and drug possession] to apply to have their felony sentences reduced to misdemeanor sentences. In addition, certain offenders who have already completed a sentence for a felony that the measure changes could apply to the court to have their felony conviction changed to a misdemeanor. However, no offender who has committed a specified severe crime could be resentenced or have their conviction changed. In addition, the measure states that a court is not required to resentence an offender currently serving a felony sentence if the court finds it likely that the offender will commit a specified severe crime. Offenders who are resentenced would be required to be on state parole for one year, unless the judge chooses to remove that requirement." (*Id.* at p. 36, italics added.)

Similarly, the arguments in favor of and against Proposition 47 spoke in terms solely of Proposition 47, and never mentioned the Act. The Argument in Favor of Proposition 47 spoke in terms of prioritizing serious and violent crime so as to stop wasting prison space "on petty crimes," stop "wasting money on warehousing people in prisons for nonviolent petty crimes," and stop California's overcrowded prisons from "incarcerating too many people convicted of low-level, nonviolent offenses." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, argument in favor of Prop. 47, p. 38.) The Rebuttal to Argument Against Proposition 47 reiterated these themes, and never suggested Proposition 47 would have any effect on resentencing under the Act.

(See Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, rebuttal to argument against Prop. 47, p. 39.)  Although the Rebuttal to Argument in Favor of Proposition 47 asserted 10,000 inmates would be eligible for early release under the measure, and that many of them had prior convictions "for serious crimes, such as assault, robbery and home burglary" (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, rebuttal to argument in favor of Prop. 47, p. 38), there is no suggestion the early release provisions would extend to inmates whose current offenses remained felonies under the Act.  The same is true of the discussion of resentencing contained in the Argument Against Proposition 47.  (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, argument against Prop. 47, p. 39.)

In light of the foregoing, we cannot reasonably conclude voters intended the definition of "'unreasonable risk of danger to public safety'" contained in section 1170.18, subdivision (c) to apply to that phrase as it appears in section 1170.126, subdivision (f), despite the former section's preamble, "As used throughout this Code …."  Voters cannot intend something of which they are unaware.

We are cognizant one of the Act's authors has taken the position Proposition 47's definition of "unreasonable risk of danger" applies to resentencing proceedings under the Act.  (St. John & Gerber, *Prop. 47 Jolts Landscape of California Justice System* (Nov. 5, 2014) Los Angeles Times <http://www.latimes.com/local/politics/la-me-ff-pol-proposition47-20141106-story.html> [as of Feb. 5, 2015].)  Looking at the information conveyed to voters, however, this clearly was not *their* intent and so an author's desire is of no import.  (Cf. *People v. Garcia* (2002) 28 Cal.4th 1166, 1175-1176, fn. 5; *People v. Bradley* (2012) 208 Cal.App.4th 64, 83; *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 30.)

We are also mindful "it has long been settled that '[t]he enacting body is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted' [citation], 'and to have enacted or amended a statute in light thereof' [citation].

'This principle applies to legislation enacted by initiative. [Citation.]' [Citation.]" (*People v. Superior Court* (*Cervantes*), *supra*, 225 Cal.App.4th at p. 1015; accord, *In re Lance W.* (1985) 37 Cal.3d 873, 890, fn. 11.) Thus, we presume voters were aware "unreasonable risk of danger to public safety," as used in section 1170.126, subdivision (f), had been judicially construed as not being impermissibly vague, but as nevertheless having no fixed definition. (*People v. Garcia* (2014) 230 Cal.App.4th 763, 769-770; *People v. Flores*, *supra*, 227 Cal.App.4th at p. 1075.) Because nowhere in the ballot materials for Proposition 47 was it called to voters' attention the definition of the phrase contained in section 1170.18, subdivision (c) would apply to resentencing proceedings under the Act, we simply cannot conclude voters intended Proposition 47 to alter the Act in that respect. Voters are not asked or presumed to be able to discern all potential effects of a proposed initiative measure; this is why they are provided with voter information guides containing not only the actual text of such a measure, but also a neutral explanation and analysis by the Legislative Analyst and arguments in support of and in opposition to the measure. As we have already observed, none of those materials so much as hinted that Proposition 47 could have the slightest effect on resentencing under the Act. (Cf. *Marshall v. Pasadena Unified School Dist.*, *supra*, 119 Cal.App.4th at pp. 1255-1256 [legislative history of enactment included information bill would add definition of particular term to Public Contract Code].)[20]

We are asked to infer an intent to extend section 1170.18, subdivision (c)'s definition to proceedings under section 1170.126 because the phrase in question only appears in those sections of the Penal Code. We cannot do so. The only resentencing

---

[20]  For the same reasons, we reject any suggestion the definition contained in section 1170.18, subdivision (c) was intended to clarify the true meaning of "unreasonable risk of danger to public safety" as used in section 1170.126, subdivision (f). (Cf. *Re-Open Rambla, Inc. v. Board of Supervisors* (1995) 39 Cal.App.4th 1499, 1511; *In re Connie M.* (1986) 176 Cal.App.3d 1225, 1238.)

mentioned in the Proposition 47 ballot materials was resentencing for inmates whose current offenses would be reduced to *misdemeanors*, not those who would still warrant *second strike felony terms*. There is a huge difference, both legally and in public safety risked, between someone with multiple prior serious and/or violent felony convictions whose current offense is (or would be, if committed today) a misdemeanor, and someone whose current offense is a felony. Accordingly, treating the two groups differently for resentencing purposes does not lead to absurd results, but rather is eminently logical.

We recognize "[i]t is an established rule of statutory construction … that when statutes are *in pari materia* similar phrases appearing in each should be given like meanings. [Citations.]" (*People v. Caudillo* (1978) 21 Cal.3d 562, 585, overruled on another ground in *People v. Martinez* (1999) 20 Cal.4th 225, 229, 237, fn. 6 & disapproved on another ground in *People v. Escobar* (1992) 3 Cal.4th 740, 749-751 & fn. 5; see *Robbins v. Omnibus R. Co.* (1867) 32 Cal. 472, 474.) We question whether Proposition 47 and the Act are truly in pari materia: That phrase means "[o]n the same subject; relating to the same matter" (Black's Law Dict. (9th ed. 2009) p. 862), and the two measures (albeit with some overlap) address different levels of offenses and offenders. In any event, "canons of statutory construction are merely aids to ascertaining probable legislative intent" (*Stone v. Superior Court* (1982) 31 Cal.3d 503, 521, fn. 10); they are "mere guides and will not be applied so as to defeat the underlying legislative intent otherwise determined [citation]" (*Dyna-Med, Inc. v. Fair Employment & Housing Com.*, *supra*, 43 Cal.3d at p. 1391).

The Act was intended to reform the three strikes law while keeping intact that scheme's core commitment to public safety. Allowing trial courts broad discretion to determine whether resentencing an eligible petitioner under the Act "would pose an unreasonable risk of danger to public safety" (§ 1170.126, subd. (f)) clearly furthers the Act's purpose. Whatever the wisdom of Proposition 47's policy of near-universal resentencing where *misdemeanants* are concerned — and "[i]t is not for us to gainsay the

34.

wisdom of this legislative choice" (*Bernard v. Foley* (2006) 39 Cal.4th 794, 813) —

constraining that discretion so that all but the worst *felony* offenders are released

manifestly does not, nor does it comport with voters' intent in enacting either measure.

Accordingly, Proposition 47 has no effect on defendant's petition for resentencing

under the Act. Defendant is not entitled to a remand so the trial court can redetermine

defendant's entitlement to resentencing under the Act utilizing the definition of

"'unreasonable risk of danger to public safety'" contained in section 1170.18,

subdivision (c).[21]

---

[21] Recently, the Third District Court of Appeal held section 1170.18, subdivision (c)'s definition of "'unreasonable risk of danger to public safety'" does not apply retroactively to defendants whose petitions for resentencing under the Act were decided before the effective date of Proposition 47. (*People v. Chaney* (2014) 231 Cal.App.4th 1391, 1395-1396, petn. for review pending, petn. filed Jan. 8, 2015.) *Chaney* did not decide whether Proposition 47's definition applies prospectively to such petitions. (*Chaney*, *supra*, at p. 1397, fn. 3.) Were we to conclude section 1170.18, subdivision (c) modifies section 1170.126, subdivision (f), we would agree with *Chaney* that it does not do so retroactively. We believe, however, that a finding of nonretroactivity inexorably leads to the possibility of prospective-only application, and that prospective-only application of Proposition 47's definition to resentencing petitions under the Act would raise serious, perhaps insurmountable, equal protection issues. "Mindful of the serious constitutional questions that might arise were we to accept a literal construction of the statutory language, and of our obligation wherever possible both to carry out the intent of the electorate and to construe statutes so as to preserve their constitutionality [citations]" (*People v. Skinner* (1985) 39 Cal.3d 765, 769), we rest our holding on the reasoning set out in our opinion, *ante*.

## **DISPOSITION**

The judgment is affirmed.

_____

DETJEN, J.

I CONCUR:


_____

LEVY, Acting P.J.


I CONCUR IN PART III:


_____

PEÑA, J.

PEÑA, J.

I respectfully dissent from parts IV and V of the majority opinion. I agree the trial court could, but was not required to, appoint an expert to evaluate defendant Timothy James Rodriguez on the question of his current dangerousness. I would remand the matter for resentencing, however, because it appears the trial court abused its discretion in denying resentencing on grounds unsupported by the evidence. A remand would permit the trial court to consider any changed circumstances establishing unreasonable risk of dangerousness since the original hearing date of August 2, 2013. This would include the recent clarification of the meaning of the phrase "unreasonable risk of dangerousness" by Proposition 47's[1] enactment of Penal Code section 1170.18, subdivision (c) (§ 1170.18(c)).

**ANALYSIS**

On February 22, 2000, defendant was arrested with five bindles of heroin. He pled guilty to the crime of possession of heroin for sale in September of 2000 and was sentenced to 25 years to life on November 9, 2000, based on prior "strike" convictions for robbery in 1984 and a first degree burglary in 1992. (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(e).) Between the current charge and the 1992 burglary "strike," he suffered a misdemeanor drug conviction in 1994 and a misdemeanor resisting or delaying arrest in violation of Penal Code section 148 in 1998. He filed his petition for resentencing on November 13, 2012, and his petition was heard on August 2, 2013, roughly 13 and one-half years since his heroin possession for sale offense. Since that time, defendant suffered no new convictions, no disciplinary violations in prison, and no "write-ups," not one. Instead, defendant obtained his GED and was awarded certificates of completion for various courses of academic education. He worked in the prison as a porter and a

---

[1]The Safe Neighborhood and Schools Act (Prop. 47, as approved by voters, Gen. Elec. (Nov. 4, 2014)).

teacher's aid and was recognized as "an outstanding worker."  He was a member in good standing of the "Lifers Group," he had outstanding attendance in the 12-step recovery program of Narcotics Anonymous beginning in 2005, and he completed phases 1 and 2 of the Victim Awareness Offenders Program.  He was 59 years old at the time of the hearing.

The prosecutor agreed defendant was a "model prisoner."  He argued against resentencing, however, based on defendant's "history of petty theft," which he called a "petty theft problem," and his escalating history of crime, referring to his robbery in 1984 and his residential burglary in 1992.  He repeatedly emphasized this,[2] concluding:

> "So our concern isn't so much how the defendant behaves in prison, our concern is what has consistently happened when released from prison, and not just a safety of property but when it escalates into these actual violent serious crimes as it has in the past."

---

[2]"[PROSECUTOR]:  Addressing specifically, if it's—what exactly the term 'public safety' means.  There is room, I think, to look at the safety of having your belongings, you know, kept secure.  But more so, what we see here is an escalation in how property is obtained.

"We're just not dealing with a history of petty theft.  I think we can see from the record we have a petty theft problem.  But then we see that some times it escalates—it's escalated [into] counts of 211 in 1984 and to a 459 first degree in 1992.  So it has escalated, these property crimes, into crimes in which we do have what's considered violent and serious felonies.

"More so too, if you look at the—it extends his entire life from 1972, I believe when he was 19 years old.  And then in 1998, we still have a 148 PC, resisting an officer, until the present offense in 2000, and there's just—either the defendant seems to be in prison or in jail or he seems to be violating some law.  This is a great concern because I think there's a difference between cases where you have two strikes and no other record, and I've seen those, and cases where you have two strikes and a dozen other offenses.

"I think when looking at who's a reasonable danger to society, you have to look and see are we dealing with a fundamental issue with the individual where he has shown that all modes of rehabilitation when outside of prison have failed and they escalate.  And in this case, they have escalated in both occasions into robberies and then into first degree burglaries as well."

2.

The evidence does not, however, support a finding of an escalation in defendant's commission of crime since his strike convictions. Instead, as noted above, since his 1992 residential burglary, defendant's crimes have deescalated with defendant committing two misdemeanors and a felony possession for sale of heroin in early 2000, resulting in his life sentence.

Unfortunately, in denying resentencing, the court adopted the prosecutor's unsupported reasoning of an escalating pattern of criminal conduct:

> "THE COURT: [A]s mentioned by the People, we've seen an escalation even without crime during that period 1979 to 1984, the fact that we have the felony first degree burglary in 1992.

> "So I'm not going to find that he does not present a danger to reoffend or to present a danger to society or to safety of the public. I find there is a reasonable risk of danger if he would be released on that basis.

> "As noted by the People, there has been an escalation in the type of crime, so that is my finding, based upon the information provided.

> "I am aware of the Lawrence case and Shaputis. And I think Shaputis was also cited by the People as well. And looking at whether the circumstances of his commitment offenses were considered, I have considered those. And his offenses are of concern because it has escalated.

> "If it was just a crime, not serious or violent, we wouldn't be here in the first place but he's got a consistent series of crimes during the time he's out. The greatest period of which he was without crime was the one that was just mentioned by the defense. So I'm not ordering that he be resentenced."

Setting aside the fact the standard provided by the law requires a finding of "unreasonable risk of danger" not "reasonable risk of danger," which might be attributed to the court simply misspeaking, the facts do not support the conclusion. It seems clear the evidence does not support a finding of "an escalation in the type of crime," which the court's statements appeared to show was the critical finding it relied upon to deny resentencing. "A trial court abuses its discretion when the factual findings critical to its

3.

decision find no support in the evidence." (*People v. Cluff* (2001) 87 Cal.App.4th 991, 998.) Consequently, the trial court abused its discretion by denying resentencing on the grounds of "an escalation of crimes."

Defendant has not had "an escalation" of crimes since his last strike—the residential burglary in 1992, which he committed before the three strikes law was enacted. Defendant has gone 21 years without an escalation in crime since his residential burglary conviction in 1992. Rather, the opposite is true—his crimes since 1992 (two misdemeanors and felony drug possession for sale) signaled a retreat from violent or serious felonies. In fact, defendant had no crimes for the previous 13 and one-half years. Although in custody during that time, defendant has had no violations of any sort during that period.

It is true defendant had a history of theft crimes and other violations up until 2000, when he received his "Three Strikes" sentence. However, this is only one of many factors the trial court may consider in the exercise of its discretion to resentence under Penal Code section 1170.126, subdivision (g). More importantly, the trial court may not rely on factors unsupported by the evidence that are critical to its decision, as occurred here. (*People v. Cluff*, *supra*, 87 Cal.App.4th at p. 998; *In re Robert L.*(1993) 21 Cal.App.4th 1057, 1068 [court's apparent concern with the possibility grandparents might obstruct reunification was wholly speculative and therefore an abuse of discretion because it lacked any reasonable basis in the record]; *Stack v. Stack* (1961) 189 Cal.App.2d 357, 368 ["It would seem obvious that, if there were *no* evidence to support the decision, there would be an abuse of discretion"].) Therefore, the matter should be remanded for resentencing unless the record shows changed circumstances establishing unreasonable risk of dangerousness since the hearing date of August 2, 2013.

In addition, I would direct the trial court to apply the current definition of "unreasonable risk of danger" in its resentencing hearing, as provided in section 1170.18(c). I respectfully disagree with the majority's analysis that section 1170.18(c)

has no application to resentencing under Proposition 36, the Three Strikes Reform Act of 2012 (the Act).

Section 1170.18(c) provides: "As used throughout this Code, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667."

This section and subdivision were enacted on November 4, 2014, when California voters passed Proposition 47, and went into effect the next day (Cal. Const., art II, § 10, subd. (a).) Thus, it would apply to a new resentencing hearing under the Act.

> "'When construing a statute, we must "ascertain the intent of the Legislature so as to effectuate the purpose of the law."' [Citations.] '[W]e begin with the words of a statute and give these words their ordinary meaning.' [Citation.] 'If the statutory language is clear and unambiguous, then we need go no further.' [Citation.] If, however, the language supports more than one reasonable construction, we may consider 'a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' [Citation.] Using these extrinsic aids, we 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*People v. Sinohui* (2002) 28 Cal.4th 205, 211-212.)

Where the statutory language is so clear and unambiguous, there is no need for statutory construction or to resort to legislative materials or other outside sources. (*Quarterman v. Kefauver* (1997) 55 Cal.App.4th 1366, 1371.) Absent ambiguity, it is presumed the voters intend the meaning apparent on the face of an initiative measure, and the courts may not add to the statute or rewrite it to conform to a presumed intent not apparent in its language. (*People v. ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 301.)

5.

In determining whether the words enacted here are unambiguous, we do not write on a blank slate. For example, in *Marshall v. Pasadena Unified School Dist.* (2004) 119 Cal.App.4th 1241, 1255, the court stated there "is nothing ambiguous about the phrase 'as used in this code.'" It held the definition of "Emergency, as used in this code" applied to the entire Public Contract Code, and it was not limited to a particular chapter, article, or division of that code. Also, in *People v. Bucchierre* (1943) 57 Cal.App.2d 153, 166, the court held: "The words 'as in this code provided' (Penal Code, § 182) refer to the Penal Code." Thus, the plain meaning rule and stare decisis dictate the conclusion that the definition provided in section 1170.18(c) applies to resentencings under the Act.

In a similar vein, the California Supreme Court in *People v. Leal* (2004) 33 Cal.4th 999, 1007-1008, applied the plain meaning rule as follows:

> "The statutory language of the provision defining 'duress' in each of the rape statutes is clear and unambiguous. The definition of 'duress' in both the rape and spousal rape statutes begins with the phrase, 'As used in this section, "duress" means ….' ([Pen. Code,] §§ 261, subd. (b), 262, subd. (c).) This clear language belies any legislative intent to apply the definitions of 'duress' in the rape and spousal rape statutes to any other sexual offenses.

> "Starting from the premise that in 1990 the Legislature incorporated into the rape statute a definition of 'duress' that already was in use for other sexual offenses, defendant argues that the Legislature must have intended its 1993 amendment of the definition of 'duress' in the rape statute, and the incorporation of this new definition into the spousal rape statute, to apply as well to other sexual offenses that use the term 'duress.' Defendant observes: 'The legislative history does not suggest any rationale for why the Legislature would want its 1993 amendment of the definition of "duress" to apply only to rape so that it would have one meaning when the rape statutes use the phrase "force, violence, duress, menace, or fear of immediate and unlawful bodily injury" but another, much more expansive meaning when the identical phrase is used in the statutes defining sodomy, lewd acts on a child, oral copulation and foreign object rape.'

> "But the Legislature was not required to set forth its reasons for providing a different definition of 'duress' for rape and spousal rape than has been used in other sexual offenses; it is clear that it did so. 'When

6.

"'statutory language is … clear and unambiguous there is no need for construction, and courts should not indulge in it.'" [Citations.] The plain meaning of words in a statute may be disregarded only when that meaning is "'repugnant to the general purview of the act,' or for some other compelling reason …." [Citations.]' [Citation.] As we said in an analogous situation: 'It is our task to construe, not to amend, the statute. "In the construction of a statute … the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or omit what has been inserted …." [Citation.] We may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used.' [Citation.]"

Because the Act had not previously defined the phrase "unreasonable risk of danger to public safety," the definition in section 1170.18(c) cannot be repugnant or contradictory to the Act, nor is there a compelling reason not to apply the plain meaning rule here. Consequently, this new definition would apply to any resentencing hearings under the Penal Code, including the Act, after November 4, 2014.[3]

_____

PEÑA, J.

---

[3]While I agree with the majority opinion that section 1170.18(c) has no retroactive application to pending appellate cases, because I conclude a remand for resentencing is necessary here, section 1170.18(c) would apply prospectively to such a resentencing hearing if held after November 4, 2014.